**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

|  |  |
|---|---|
| VARTOUHI KHANISHIAN, ) | Case No. CV 04-09050-MLG |
| ) | |
| Plaintiff, ) | MEMORANDUM OPINION AND ORDER |
| ) | |
| v. ) | |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**I.   Procedural History**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for Disability Insurance and Supplemental Security Income benefits. For the reasons stated below, the final decision of the Commissioner is affirmed.

Plaintiff protectively filed an application for benefits on May 4, 2000.  The Social Security Administration denied benefits at the initial and reconsideration stages of the administrative process. A *de novo* hearing was held on October 23, 2001, before Administrative

Law Judge ["ALJ"] Michael Tucevich, who issued a decision on November 16, 2001 finding that Plaintiff was not disabled. (Administrative Record ["AR"] at 12-23).  On December 12, 2002, this Court entered a stipulated Order of Remand for further administrative proceedings, including a new hearing. (AR at 385-88).  Meanwhile, on July 2, 2002, Plaintiff filed a second application for disability benefits, which was also denied.  (See AR at 286).  In her applications, Plaintiff alleges that she has been disabled and unable to work since March 22, 1999 due to depression, migraine headaches, dizziness, degenerative disc disease in the neck with radiculopathy to the upper extremities, arthritis in her back with radiculopathy to the left lower extremity, swollen arms, numbness and swelling in the legs, an ulcer, unstable blood pressure, anemia, shortness of breath and high cholesterol. (AR at 287).

On March 2, 2004, ALJ Joel B. Martinez held an administrative hearing at which Plaintiff, two medical experts and a vocational expert testified.  In a decision dated June 30, 2004, addressing both the 2000 and 2002 applications, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time prior to the date of the decision. (AR at 282-310).[1]  The Appeals Council denied review and Plaintiff commenced this action for judicial review.

///

---

[1]  Although Plaintiff contends that the ALJ issued two decisions dated June 30, 2004, and that "Defendant has furnished one of the ALJ's decisions, but has not furnished the other," (Joint Stip. at 3), the ALJ makes clear in his decision that he considered both applications together, marked exhibits pertaining to each application separately, and issued separate appeal notices with respect to each application. (See AR at 286).

## II.   **Factual and Medical History**

Plaintiff was born on June 12, 1953,[2] and was 51 years old at the time of ALJ Martinez's decision.  She completed the equivalent of the sixth grade. She worked as a jewelry polisher from 1973 to 1976, after which she was an in-home care provider for her mother from 1980 through August 1998. (AR at 334).

In his decision denying benefits, the ALJ found that Plaintiff had the medically-determinable impairments of moderate osteoarthritis of the cervical spine with minimal radiculopathy, minimal osteoarthritis of the thoracic spine, minimal osteoarthritis of the lumbar spine, mild osteoarthritis of the left knee, obesity, hypertension, tension or muscle contraction type headaches, a history of mild anemia, and a mild major depressive disorder. (AR at 288). However, the ALJ determined that these impairments were not severe enough, either singly or in combination, to meet or medically equal any of the regulatory listing of impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 295).

The ALJ further found that Plaintiff retained the residual functional capacity ["RFC"] to perform work a range of work at the light level of exertion, but would be limited to simple work, and would be precluded from work requiring climbing, balancing, or exposure to unprotected heights or hazardous machinery. (AR at 296). In making these findings the ALJ, in a detailed and lengthy discussion, found that Plaintiff's subjective symptom testimony was

---

[2]   Plaintiff's date of birth was a contested issue at the first hearing.  ALJ Martinez found her correct date of birth to be June 12, 1953. (AR at 287).

3

not sufficiently credible to warrant restrictions greater than those established by the objective medical record. (AR at 303-06).

The ALJ further determined that Plaintiff's RFC would prevent her from returning to her past work but based on the testimony of the vocational expert, she would be able to perform other work existing in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time though the date of the decision. (AR at 308).

In the parties' joint stipulation of issues and contentions, Plaintiff raises five claims of error. She contends that the ALJ erred, first, in failing to give controlling weight to the opinion of a number of Plaintiff's treating physicians; second, in discounting Plaintiff's credibility as to her subjective complaints; third, in applying an incorrect "objective medical evidence" standard in his decision; fourth, in relying upon testimony of medical experts Dr. Maxwell and Dr. Griffin that violated the correct legal standard regarding objective medical evidence; and fifth, in failing to pose a hypothetical question to the vocational expert that incorporated all of Plaintiff's impairments and limitations. Defendant contends that the final decision is free from error and supported by substantial evidence. This matter is ready for decision.

## III. **Standard of Review**

This court's review of the ALJ's conclusions is limited. The claimant has the burden of establishing her entitlement to disability benefits. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The findings of the ALJ are conclusive if supported by substantial

evidence based on the record as a whole and if the proper legal standards were applied.  42 U.S.C. § 405(g).  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001).  Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson,* 402 U.S. at 401.  It is more than a scintilla of evidence but less than a preponderance of evidence.  *Desrosiers v. Secretary of Health and Human Resources*, 846 F.2d 573, 575-76 (9th Cir. 1988).

Even if the Court might arrive at a different conclusion, an administrative decision must be affirmed if supported by substantial evidence.  Where the evidence could support either outcome, the court may not substitute its judgement for that of the ALJ.  *Holohan*, 246 F.3d at 1201, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Where the evidence can be rationally interpreted in more than one way, the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).  However, the court must review the record as a whole and consider adverse as well as supporting evidence.  *Id.; see also Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986).  With these standards in mind, the Court will analyze Plaintiff's claims.

**IV.   Discussion and Analysis**

   **(A)   The ALJ's Rejection of the Opinions of Plaintiff's Treating Physicians Was Substantially Supported**

Plaintiff contends that the ALJ erred in rejecting the opinions of Drs. Svadjian, Daykhovsky, Shaider, Kadoyan, Janoian, and Vintas. Plaintiff claims that the ALJ erred in finding that the opinions of several "one-time" examining physicians constituted substantial

evidence sufficient to contradict the opinions of these treating physicians, and in failing to give "controlling weight" to the opinions of the treating physicians. According to Plaintiff, the ALJ "ignored the findings of treating physicians and based his decision on the opinions of consultative physicians." (Joint Stip. at 16).

The opinions of treating physicians are ordinarily to be given greater weight than the opinions of other physicians. *Aukland v. Massanari*, 257 F.3d 1033, 1037 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). A treating physician's opinion as to the nature and severity of an impairment must be given controlling weight if the opinion is well supported and not inconsistent with other substantial evidence. SSR 96-2p; *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). Even when the treating physician's opinion is contradicted by other medical evidence, that opinion is entitled to deference unless there are specific and legitimate reasons, supported by substantial evidence in the record, for its rejection. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The opinion of a psychologist is given the same weight as that of a physician. *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir. 1995).

With these legal standards in mind, the Court must determine whether the ALJ's treatment of the following opinions was substantially supported.

(i) Dr. Edward Svadjian

Dr. Svadjian, Plaintiff's family physician, treated her from December 13, 2002 to September 4, 2003. Dr. Svadjian stated that Plaintiff was suffering from depression, migraine headaches, neck pain, abdominal pain, and severe left knee pain. (AR at 617-25). On March 5, 2004, Dr. Svadjian diagnosed severe degenerative arthritis,

6

and opined that Plaintiff had severe low back pain, and leg and foot pain.  Dr. Svadjian stated that, in his opinion, Plaintiff was not a malingerer, but suffered from depression and anxiety.  He further opined that Plaintiff could sit for less than two hours total, and stand or walk for less than two hours total in an eight-hour work day, that she could "never" lift or carry any weight, even less than ten pounds, and that she could not work. (AR at 635-38).

The ALJ rejected Dr. Svadjian's opinion.  The ALJ noted that Dr. Svadjian's progress notes "included numerous diagnoses" apparently based on Plaintiff's subjective complaints and unsubstantiated by any clinical findings.[3] (AR at 290-91).  In particular, the ALJ found that the evidence of record did not substantiate migraine headaches, dizziness, swollen arms, numbness or swelling in the legs, an ulcer, chronic hyperlipidemia, any cardiac condition other than hypertension, which was under control, or any serious pulmonary condition, including asthma. (AR at 292).  On this basis, the ALJ found that none of these alleged conditions constituted a medically-determinable severe impairment.[4]  The ALJ  rejected Dr. Svadjian's opinion that Plaintiff was not capable of even sedentary work because that opinion was unsubstantiated by clinical evidence and inconsistent with the objective medical evidence of record, including Dr. Svadjian's own rather conservative treatment, and the opinions

---

[3] These diagnoses include coronary artery disease, abdominal pain, painful varicose veins, phlebitis, chronic gastritis, migraines, palpitations, dyspnea, anemia, painful calluses, central nervous system problems, dizziness, asthma, chest pain, and lumbar radiculopathy. (AR at 617-18).

[4] This finding was correct as subjective symptoms may not establish the existence of an impairment in the absence of objective findings. *See Ukolov v. Barnhart*, –F.3d–, 2005 DJDAR 10291, 10292 (9th Cir. 8/23/2005).

7

of other physicians. (AR at 297-98).

As for the psychological impairments diagnosed by Dr. Svadjian, the ALJ found that the doctor was not a mental health specialist and gave no indication of having performed a mental status examination, but appeared to rely solely on Plaintiff's subjective complaints and list of medications. (AR at 295).

The ALJ's rejection of Dr. Svadjian's opinion is substantially supported. Dr. Svadjian prepared only a number of forms containing either checked boxes and/or diagnoses, without providing any explanation or clinical evidence supporting these diagnoses. (See AR at 610-18). The ALJ also properly discounted Dr. Svadjian's opinion on the basis that it relied upon Plaintiff's subjective complaints, which the ALJ determined to be not entirely credible.[5] The ALJ's rejection of this opinion was substantially supported.

(ii) <u>Dr. Leon Daykhovsky</u>

Dr. Daykhovsky treated Plaintiff beginning in 1999. In October 2001, he diagnosed depression, anxiety, rheumatoid arthritis, cervical neuralgia, disequilibrium, anemia, severe headaches, gastritis, HTN, swollen joints, and low back pain. (AR at 552). In a pulmonary function report dated April 16, 2002, Dr. Daykhovsky noted that the results "suggest a mild restriction." (AR at 578). The results of a pulmonary function report dated September 9, 2002, suggested a "moderate restriction." (AR at 576).

The ALJ rejected Dr. Daykhovsky's diagnosis of depression and anxiety because he was not a mental health specialist, did not perform a mental status examination, and relied solely upon

---

[5]   The following section addresses the ALJ's determination of Plaintiff's credibility in greater detail.

Plaintiff's subjective complaints. (AR at 293).  The ALJ also gave little weight to Dr. Daykhovsky's October 22, 2001 opinion concerning social functioning and arm use (AR at 552) because Dr. Daykhovsky offered no clinical findings or diagnostic studies to substantiate his report, which was inconsistent with the findings of other physicians.

The ALJ's decision with respect to Dr. Daykhovsky's conclusions is substantially supported.  As the ALJ noted, Dr. Daykhovsky is not a psychiatric specialist, and apparently did not conduct any psychiatric examination.  In addition, the ALJ correctly noted that the physician provided no further explanation or documentation in support of his findings of functional limitations.

### (iii) Dr. Albert Shnaider

Dr. Shnaider conducted a psychiatric evaluation of Plaintiff on behalf of the state agency on September 5, 2002.  Plaintiff reported feeling depressed "on a nearly daily basis" for ten years owing to deaths of family members, multiple crying spells per week, and memory and concentration deficits.  Dr. Shnaider diagnosed dysthymia with anxiety and bereavement, but ruled out major depression with anxiety. He assessed a Global Awareness of Functioning ["GAF"] score of 55. The doctor noted that Plaintiff had never required psychiatric hospitalization and was mentally able to take care of her daily activities, and concluded that she should be able to function and interact appropriately in a work environment. (AR at 562-68).

The ALJ did not accept Dr. Shnaider's dysthymia diagnosis, finding that it was belied by the other evidence and by the doctor's own findings. He further found that the GAF score of 55 was based entirely on Plaintiff's subjective account. (AR at 294).

To the extent that the ALJ discounted Dr. Shnaider's diagnosis, his decision is substantially supported. Dr. Shnaider expressly noted that the "source of information for this evaluation was the patient who is a somewhat vague historian." (AR at 562). Further, Dr. Shaider's comments regarding the results of his mental status examination of Plaintiff tend to contradict his diagnosis. For example, he noted that "[Plaintiff] was able to establish rapport with the examiner . . . [Plaintiff] was alert and oriented to time, place, person and purpose . . . Long-term memory was intact . . . [Plaintiff] had no looseness of association." (AR at 565-66). Furthermore, as noted above, Dr. Shaider noted that Plaintiff had never been hospitalized for psychiatric reasons, and was able to function independently. (AR at 566).

In addition, the ALJ did not err in declining to assign more weight to the GAF score of 55. Unlike treatment notes, a GAF rating reflects a temporal assessment of an individual's condition. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 33 (4th ed., text rev. 2000). Therefore, a GAF score, standing alone, is not significantly probative of the severity of a claimant's impairment. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Plaintiff's claim with respect to Dr. Shaider is without merit.

(iv) <u>Dr. Ara Kadoyan</u>

Dr. Kadoyan, Plaintiff's treating psychiatrist, reported on May 31, 2000, that she was complaining of severe headaches accompanied by nausea, vomiting, and dizziness lasting three to four days. He also noted "anger, depression, irritability." (AR at 245). His impression was "major depressive disorder." (AR at 247).

10

In a September 27, 2001 mental disorder questionnaire form, Dr. Kadoyan reported that he had been treating Plaintiff monthly since May 2001 for her complaints of depression, lack of energy, and anxiety.  He noted that she avoided interaction with others, was "usually dressed and groomed carelessly," and had tried many different anti-depressants and anti-psychotic medications. (AR at 27).  Dr. Kadoyan diagnosed major depressive disorder and mixed dependent and schizoid personalities, and opined that her prognosis was poor. (AR at 31).

In another questionnaire form completed on October 13, 2001, Dr. Kadoyan noted once again that Plaintiff had complained of depression lasting about ten years, which recently had worsened, that she had taken a number of different medications seemingly without benefit, would not take care of herself voluntarily, could not follow instructions or finish a task, was unable to tolerate any kind of stress, and was consequently "totally and permanently disabled, unable to work." (AR at 547-51).  Finally, on March 4, 2004, Dr. Kadoyan reiterated his diagnosis of major depressive disorder, noting that Plaintiff was then taking Prozac, Restoril, Klonopin, and Imitrex, and was unable to work. (AR at 639-40).

In his decision, the ALJ rejected Dr. Kadoyan's mixed dependent and schizoid personalities diagnosis as "based primarily on a long regurgitation of [Plaintiff]'s subjective complaints," which he found not entirely credible. (AR at 293).  The ALJ also relied upon the opinion of the psychiatric expert, Dr. Glenn Griffin, who testified at the hearing that the record could not substantiate this "schizoid" diagnosis and noted that Dr. Kadoyan did not mention this diagnosis after September 2001 nor did any other psychiatric provider make such

11

a diagnosis. (Id.).  The ALJ further found that Dr. Kadoyan never performed a thorough interview or mental status examination, but supplied cursory progress notes that simply repeated Plaintiff's subjective complaints. (AR at 294).  The ALJ also rejected Dr. Kadoyan's opinion of March 2004, finding that it was unsubstantiated by progress notes or test results, and finding it noteworthy that Dr. Kadoyan made no mention of the deaths in Plaintiff's family that apparently contributed to her depression. (AR at 295).

In rejecting Dr. Kadoyan's opinion, the ALJ found that Plaintiff was not entirely credible, and that she was not being treated at a level commensurate with a serious mental condition. (AR at 295).  In addition, the ALJ rejected Dr. Kadoyan's conclusion that Plaintiff was disabled because the psychiatrist's initial examination was cursory, his opinion was inconsistent with that of other psychiatrists of record who performed more detailed mental status examinations, his diagnosis was belied by the rather conservative treatment he provided Plaintiff, and his opinion that Plaintiff was disabled was an issue reserved to the Commissioner. (AR at 299-300).

The ALJ's rejection of Dr. Kadoyan's opinion is substantially supported.  The ALJ correctly observed that Dr. Kadoyan's mental status examination, (AR at 246-67), was cursory in comparison to those recorded by the other psychiatrists of record, and omitted testing for memory, concentration, fund of knowledge, and judgment. Dr. Kadoyan's diagnosis was also unsupported by reference to any specific results.  The ALJ's found that Dr. Kadoyan's diagnoses of major depressive disorder and mixed dependent and schizoid personalities was inconsistent with the findings of other psychiatric reports, including that of Dr. Shnaider and Dr. Vintas, both

12

examining psychiatrists, as well as the opinion of the medical expert, Dr. Griffin.  This finding is substantially supported since none of those psychiatrists diagnosed either major depressive disorder or schizoid personality.  In addition, Dr. Griffin correctly noted that Dr. Kadoyan supplied no treatment notes that supported his diagnoses, (AR at 363).

Faced with conflicting opinions from legitimate sources, it is the ALJ's province to weigh the evidence to resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  The ALJ properly did so here, rejecting Dr. Kadoyan's opinion in favor of those of the other psychiatrists.  Furthermore, the ultimate question of whether a claimant is disabled is reserved to the Commissioner, and the ALJ need not accept a treating physician's opinion on that issue.  *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1194-95 (9th Cir. 2004).  The claim is without merit.

(v)  <u>Dr. Noobar Janoian</u>

Dr. Janoian, a family practitioner, noted on a disability insurance request form dated February 14, 2000 that he had been treating Plaintiff since November 1999.  Dr. Janoian diagnosed cervical spine discogenic disease, neuropathy, vascular headaches, severe recurring. (AR at 200).  In November 1999, Dr. Janoian stated that because of her severe neck and lower back pain, Plaintiff could not lift, carry, or perform household chores. (AR at 202).

The ALJ gave little weight to Dr. Janoian's opinion.  With respect to the physician's November 1999 opinion, the ALJ noted that Dr. Janoian relied exclusively upon Plaintiff's subjective complaints, which were not credible. In addition, the ALJ found the opinion to be inconsistent with the objective medical evidence, and

13

Plaintiff's treatment regimen.  As for the February 2000 opinion, the ALJ noted that Dr. Janoian "failed to mention" any specific clinical findings, other than one X-ray, that the opinion was inconsistent with objective medical evidence, with Plaintiff's treatment, and with the opinion of other physicians of record. (AR at 296).

The ALJ's decision is substantially supported.  In the form that he completed, Dr. Janoian noted that his diagnosis of cervical spine discogenic disease, neuropathy, and vascular headaches, none of which were diagnosed by other physicians, was confirmed by "objective findings, physical examination, symptomatology, X-ray," but failed to specify the objective findings at issue or to provide any details about the particular symptoms that confirmed the diagnoses.  Since his opinion was essentially conclusory and unsupported, the ALJ was entitled to disregard it. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)("The ALJ need not accept a treating physician's opinion which is brief and conclusionary in form with little in the way of clinical findings to support its conclusion.") The claim is without merit.

(vi) Dr. Gustavo Vintas

Dr. Vintas performed a psychiatric evaluation on behalf of the state agency.  After interviewing Plaintiff, he diagnosed depressive disorder not otherwise specified, and assessed a GAF score of 61. (AR at 210-15).  He noted that Plaintiff was a "vague and suboptimal historian," that she had never been hospitalized for psychiatric reasons, and had no difficult relating to himself or other medical staff during the interview.  He further noted that Plaintiff "behave[d] . . . as though she has a mild limitation maintaining regular attendance and adequate concentration during an eight-hour

14

workday [and] behave[d] as though she has a mild to moderate limitation maintaining pace and in dealing" with work-related stresses and changes. (AR at 215).  Dr. Vintas noted that she would benefit from vocational rehabilitation and assigned a prognosis of "fair." (Id.).

The ALJ rejected Dr. Vintas's opinion to the extent that it suggested Plaintiff would have difficulty performing even simple work.  He noted that Plaintiff gave an inconsistent presentation, which Dr. Vintas relied upon, had made conflicting statements to different doctors, and had engaged in symptom magnification. (AR at 299).  The ALJ further noted that in September 2000, a state agency psychiatrist indicated on a Psychiatric Review Technique form that Plaintiff had only "slight" functional limitations, and was able to perform simple work. (AR at 228).

To the extent that he rejected Dr. Vintas's opinion, the ALJ's decision is substantially supported.  As noted, Dr. Vintas reported that Plaintiff "behave[d] in the interview as though she has a mild limitation" in maintaining attendance and concentration, and "behave[d] as though she has a mild to moderate limitation maintaining pace" and dealing with work-related stresses.  That guarded assessment is not bolstered by Dr. Vintas's other findings that Plaintiff is oriented to person, place, time and purpose, was clear and alert and maintained appropriate eye contact. (AR at 213-14).  Furthermore, Dr. Vintas's opinion is undermined by its reliance on Plaintiff's subjective complaints, as set forth below, and contradicted by the findings of the state agency psychiatrist that Plaintiff had only slight functional limitations.  The claim is without merit.

15

**(B)   The ALJ's Credibility Determination Is Substantially Supported**

Plaintiff contends that the ALJ failed to offer specific and cogent reasons for discounting her subjective complaints. In his decision the ALJ made numerous references to Plaintiff's lack of credibility. Indeed, as set forth above, his rejection of the opinions of various treating physicians is based, in large part, on their reliance on Plaintiff's own complaints which he found to be not entirely credible.[6]   In a detailed discussion of Plaintiff's credibility, the ALJ emphasized, first, that the objective medical evidence failed to substantiate disability; second, that her treatment history was not commensurate with her alleged impairments; third, that Plaintiff exaggerated her symptoms, and that her allegations of almost complete incapacity were at odds with the observations of various examining physicians; and fourth, that the record demonstrated inconsistencies between Plaintiff's own statements regarding the extent of her daily activities, the extent of her alleged migraines, her ability to read, and her ability to communicate in English. (See AR at 301-05).

Under the governing legal standard, unless there is evidence that a claimant is malingering, the ALJ can only reject the claimant's subjective testimony regarding the severity of his symptoms by making "specific findings stating clear and convincing

_____

[6] For example, Dr. Svadjian "included numerous diagnoses that were based on [Plaintiff]'s subjective complaints," (AR at 290), and based his mental diagnoses on those complaints; (AR at 295); "[t]hose physicians who have diagnosed migraine headaches have done so based on [Plaintiff]'s subjective complaints, and she is not entirely credible;" (AR at 292); Dr. Daykhovsky "relied on the subjective complaints of [Plaintiff]," as did Dr. Kadoyan; (AR at 293).

16

1   reasons for doing so". *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

2   Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 917-18 (9th Cir. 1993).

3   Under this standard, it is not sufficient for the ALJ to make general

4   findings about the claimant's testimony. *Dodrill*, 12 F.3d at 918.

5   Rather, the ALJ must specify which testimony is not credible and

6   state the specific evidence that suggests the testimony is not

7   credible. *Id.*

8       In determining credibility, the ALJ may consider "ordinary

9   techniques of credibility evaluation," such as inconsistent

10  statements, unexplained failures to seek treatment, and the daily

11  activities of the claimant. *Smolen*, 80 F.3d at 1284. The ALJ must

12  also consider the "observations of treating and examining physicians

13  and other third parties regarding . . . the nature, onset, duration,

14  and frequency of the claimant's symptom; precipitating and

15  aggravating factors; functional restrictions caused by the symptoms;

16  and the claimant's daily activities. *Id.*

17      In this case, as set forth above, the ALJ provided numerous

18  reasons and examples as to why he found Plaintiff not to be credible,

19  which in turn, undermined the opinion of those physicians who relied

20  upon her subjective complaints. It is unnecessary to cite every one

21  of the ALJ's observations. It suffices to point out that each of the

22  ALJ's reasons is substantially supported. First, as set forth more

23  fully in the first section, the objective medical evidence does not

24  fully substantiate Plaintiff's claimed impairments. While a lack of

25  objective medical evidence cannot form the sole basis for discounting

26  a claimant's testimony, "it is a factor the ALJ can consider in his

27  credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

28  2005). In his decision, the ALJ pointed out the lack of clinical or

other evidence supporting, for instance, the diagnoses of cervical spine discogenic disease, (AR at 296), or mixed dependent and schizoid personalities. (AR at 293). The ALJ appropriately considered the lack of objective medical evidence in discounting Plaintiff's credibility.

Second, the ALJ's finding that Plaintiff's treatment history was not commensurate with the alleged severity of her impairments is also supported. For instance, Dr. Kadoyan essentially provided only "medication monitoring" for treating Plaintiff's mental condition, and never recommended more aggressive treatment or hospitalization. (See AR at 295). Dr. Svadjian diagnosed numerous ailments, but his treatment appeared to consist only of prescribing a number of medications. (See AR at 610-17). Plaintiff herself testified that she had not undergone surgery or received injections for her back pain. (AR at 338). The ALJ noted that no explanation was offered as to why Plaintiff would not have sought more aggressive treatment if she needed it. (AR at 302). This basis for discounting Plaintiff's credibility is legitimate and substantially supported. *See, e.g., Flaten v. Sec'y of Health and Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995)(minimal treatment supported ALJ's decision to discredit testimony).

Third, the ALJ's finding that Plaintiff exaggerated her symptoms is substantially supported. Dr. Bleecker, who conducted an orthopedic evaluation of Plaintiff on September 11, 2003, noted a "rather moderate psychiatric overlay to her complaints." (AR at 629). Plaintiff testified that she could not lift anything more than a quarter of a cup of water, (AR at 347), but Dr. Bleecker concluded after a physical examination that she could lift up to 25 pounds. (AR

at 629).  Nor does the medical evidence of record support Plaintiff's claim that she is unable to walk by herself or that she suffers from debilitating migraine headaches.

Finally, the ALJ's finding that Plaintiff gave inconsistent statements is substantially supported in the record.  In a Daily Activities Questionnaire dated August 12, 2002, Plaintiff stated that she was virtually incapacitated and dependent on others for all of her needs. (AR at 480-84).  However, on September 5, 2002, Plaintiff reported to Dr. Shnaider that she took care of her own hygiene, shopped with her family on a weekly basis, attended church each month, and sometimes drove herself places. (AR at 564-65).  A claimant's inconsistent statements regarding her daily activities is a legitimate basis for discounting her credibility. *Smolen* at 1284. In sum, the ALJ's credibility determination was substantially supported, and Plaintiff's claim is without merit.

### (C)   The ALJ's Consideration of the Medical Evidence Was Appropriate

Plaintiff contends that the ALJ failed to comply with the appropriate standards regarding objective medical evidence and the existence of a medical condition.  In particular, Plaintiff maintains that the ALJ's decision was contrary to Social Security Ruling ["SSR"] 96-2p.  That ruling states, in footnote 2, that under the regulations, a symptom "such as pain, fatigue, shortness of breath, weakness or nervousness . . . [which] is an anatomical, physiological, or psychological abnormality that can be shown by medically clinical techniques . . . represents a medical 'sign'." In Plaintiff's view, therefore, once a physician observes such an

19

abnormality, the claimant's symptom is converted into a "sign," which then constitutes a clinical objective medical finding.

The distinction is crucial, for under the *Cotton* test, "a claimant who alleges disability based on subjective symptoms must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)(citing *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986)). Once such objective medical evidence has been produced, however, a claimant's testimony regarding the severity of her symptoms may not be discredited based solely on a lack of objective medical evidence substantiating the extent of the claimed symptoms. *Id*. at 1281-84.

Plaintiff's assertion regarding the adequacy of the ALJ's determination is incorrect. As SSR 96-2p states, a symptom must not only be an "abnormality," it must also be shown by "medically clinical techniques." Here, the ALJ found that certain of Plaintiff's subjective complaints essentially were unsupported by clinical findings. While it is true that the second step of the *Cotton* test precludes the ALJ from discounting the severity of a claimant's alleged symptoms purely on the apparent lack of objective evidence, the ALJ in this case found that many of Plaintiff's complaints did not satisfy step one of the *Cotton* test. In other words, the record did not provide objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. As set forth above, that determination was substantially supported. The ALJ properly applied the objective medical evidence standard. Therefore, Plaintiff's claim is without merit.

20

(D)   **The ALJ Properly Relied Upon the Testimony of the Medical Experts**

Plaintiff contends that the ALJ erred in relying upon the testimony of Dr. Maxwell and Dr. Griffin because those experts improperly defined "objective medical evidence," and failed to consider that a physician's observation of a symptom "is a sign of medical impairment" or that "a physician's diagnosis is clinical objective medical evidence." (Joint Stip. at 42).

For the reasons just given, Plaintiff is incorrect regarding the definition of clinical objective medical evidence.  As set forth above, the ALJ's rejection of the opinions of Dr. Kadoyan, Dr. Svadjian, and to some extent those of Dr. Shnaider and Dr. Vintas, was substantially supported.  As for the ALJ's reliance upon the opinions of Dr. Maxwell and Dr. Griffin, such opinions may serve as substantial evidence to reject the opinion of a treating physician when they are supported by other evidence in the record and are consistent with it, and when the ALJ has set out a detailed and thorough summary of the facts and conflicting clinical evidence, stated his interpretation thereof, and made findings.  *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 600-601 (9th Cir. 1999).  That is what the ALJ did here, and his determination is substantially supported.  The claim is without merit.

(E)   **The ALJ's Reliance Upon the Vocational Expert's Opinion Is Substantially Supported**

Plaintiff contends that the hypothetical question propounded by the ALJ to the testifying vocational expert ["VE"] did not include all of her "verified limitations" and, therefore, the VE's testimony did not constitute substantial evidence in support of the ALJ's

21

decision.  In particular, Plaintiff asserts that the hypothetical did not incorporate the opinions by Plaintiff's treating physicians stating that Plaintiff cannot work or is disabled, and ignored medical evidence that she has work restrictions due to pain, weakness, easy fatigue, and depression.

Under the governing legal standard, "[i]n order for the testimony of a [VE] to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental, supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (internal quotation marks omitted) (citing *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) ("[T]he ALJ may elicit testimony from a vocational expert, but the hypothetical posed to the vocational expert must consider all of the claimant's limitations.").

Here, as set forth above, the ALJ determined that Plaintiff's RFC would permit her to perform light work that was simple and low-stress in nature, but that she would be precluded from work requiring climbing, balancing, or exposure to unprotected heights or hazardous machinery. (See AR at 296).  The ALJ's hypothetical question to the VE corresponded to that RFC determination.[7]  He was not obliged to incorporate restrictions that were not supported by the record.  *See*

---

[7]  The ALJ asked the VE about the availability of work for: A hypothetical person of [Plaintiff]'s age, education, and work history, could do light level exertional work, could be able to sit for six hours in an eight hour day, could be required to stand for a few minutes hourly, would be no climbing or balancing, no unprotected heights or hazardous machines, occasional knee [sic], crouch, and crawl, an occasional push/pull with the upper extremities, and I would say limited simple, low-stress work. (AR at 373).

1   *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("The ALJ
2   is free to accept or reject restrictions in a hypothetical question
3   that are not supported by substantial evidence.").  As set forth
4   above, the ALJ properly rejected the opinions of various treating
5   physicians, and properly found that Plaintiff's subjective symptom
6   testimony was less than credible.

7       Because the ALJ's hypothetical incorporated those limitations
8   that were substantially supported, he did not err in relying upon the
9   testimony of the VE as to the work that someone with Plaintiff's
10  limitations could perform.  The claim is also without merit.

11

12  **V.   Conclusion**

13      For the reasons stated above, the Court finds that the ALJ's
14  decision was supported by substantial evidence.  Plaintiff's motion
15  for summary judgment is **DENIED.**  The Defendant's motion for summary
16  judgment is **GRANTED.**  It is **ORDERED** that judgment be entered for the
17  Defendant and that this matter be dismissed with prejudice.
18  Dated: September 12, 2005

19

20                                          **/S/**
                                    _____
21                                  Marc L. Goldman
                                    United States Magistrate Judge
22

23

24

25

26

27

28